IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD OF GREATER TEXAS FAMILY PLANNING AND PREVENTATIVE HEALTH SERVICES, INC.; PLANNED PARENTHOOD ASSOCIATION OF HIDALGO COUNTY TEXAS, INC.; PLANNED PARENTHOOD ASSOCIATION OF LUBBOCK, INC.; PLANNED PARENTHOOD ASSOCIATION OF CAMERON AND WILLACY COUNTIES; FAMILY PLANNING ASSOCIATES OF SAN ANTONIO; PLANNED PARENTHOOD GULF COAST, INC.; and, PLANNED PARENTHOOD OF WEST TEXAS, INC. <br>　　　　Plaintiffs, <br><br>　　vs. <br><br>KYLE JANEK, Executive Commissioner, Texas Health and Human Services Commission, in his official capacity, <br>　　　　Defendant. | § § § § § § § § § § § § CIVIL CASE NO. _____ § § § § § § § § § § |

## COMPLAINT

**I.　　NATURE OF THE ACTION**

　　1.　　This action is filed pursuant to 42 U.S.C. § 1983 to vindicate Plaintiffs' rights secured by the U.S. Constitution which are violated by Defendant's latest attempt to bar Plaintiffs from providing non-abortion preventive health services to low-income women in a family planning program because, outside of that program and with private funds, Plaintiffs engage in constitutionally protected conduct.[1]

---

[1] Plaintiffs have filed this action to preserve their ability to pursue their federal constitutional claims in this Court. Plaintiffs believe that the Rules challenged here are invalid under Texas law and will be filing a lawsuit promptly in state court to adjudicate their state law claims. Plaintiffs intend to then ask this Court to abstain pursuant to *Railroad Commission of Texas v.*

COMPLAINT – Page 1

2.     Defendant, on behalf of the Texas Department of State Health Services ("DSHS"), has recently adopted rules to govern a new, wholly state-funded family planning program called the Texas Women's Health Program ("TWHP").  Defendant claims that TWHP is a "successor program" to the Women's Health Program ("WHP"), which the Texas Legislature authorized him to run, and in which Plaintiffs have participated since its inception, providing family planning and preventive health services to nearly half of the more than 100,000 low-income women enrolled statewide.  Defendant proposed TWHP because the federal government refused to renew the Medicaid waiver required for federal funding of WHP due to Defendant's exclusion of Plaintiffs from WHP.

3.     The new rules establishing TWHP, which will be codified at 25 Texas Admin. Code §§ 39.31-45 ("TWHP Rules" or "Rules"), 37 Tex. Reg. 8578-95 (Oct. 26, 2012), bar Plaintiffs from TWHP because, among other reasons, they "share common ownership, control, or identification (names, logos, etc.)" with entities that, outside of any government program, perform abortions and/or advocate to protect access to safe and legal abortion.

4.     The TWHP Rules took effect on November 1, but upon information and belief, Defendant has not yet implemented them.  Defendant has repeatedly stated that he is "ready" to begin TWHP at any time.  It appears that he is likely to implement TWHP no later than January 1, 2013, after federal funding for WHP is currently expected to expire.

5.     Plaintiffs seek declaratory relief against Sections 39.33(1) and 39.38 of the TWHP Rules because those sections of the Rules impose unconstitutional conditions on their eligibility to participate in TWHP.  In particular, those sections of the TWHP Rules disqualify

---

*Pullman Co.*, 312 U.S. 496 (1941), and to dismiss this lawsuit without prejudice. *See England v. La. State Bd. of Med. Examiners*, 375 U.S. 421 (1964); *Nationwide Mutual Ins. Co. v. Unauthorized Practice of Law Comm.*, 283 F.3d 650 (5th Cir. 2002).

Plaintiffs from TWHP based on their constitutionally protected conduct in which they engage outside of any government program and with wholly private funds and based on their "affiliation" with legally and financially separate entities that engage in constitutionally protected conduct.

6. If enforced, the challenged sections of the TWHP Rules will cause irreparable harm to Plaintiffs and to tens of thousands of low-income women seeking family planning and other preventive health services. Accordingly, Plaintiffs seek appropriate injunctive relief.

## II. JURISDICTION AND VENUE

7. Jurisdiction over Plaintiffs' claims is conferred on this Court by 28 U.S.C. §§ 1331 and 1367.

8. Plaintiffs' claim for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

9. Venue is appropriate under 28 U.S.C. § 1391(b) because the Defendant resides in this District.

## III. THE PARTIES

### A. Plaintiffs

10. Planned Parenthood of Greater Texas Family Planning and Preventative Health Services, Inc. ("PPGT") is a Texas not-for-profit corporation headquartered in Dallas which was formed on September 1, 2012 as a result of the merger of Planned Parenthood entities in Austin, Dallas/Fort Worth, and Waco. PPGT operates 23 health centers that participate in WHP and would participate in TWHP but for the challenged provisions of the Rules. PPGT does not provide abortions.

11. Planned Parenthood Association of Hidalgo County Texas, Inc. ("PPAHC") is a Texas not-for-profit corporation headquartered in McAllen. PPAHC provides family planning services, including through WHP (and would through TWHP but for the challenged provisions of the Rules), at four health centers in Hidalgo County. PPAHC does not provide abortions.

12. Planned Parenthood Association of Lubbock, Inc. ("PPAL") is a Texas not-for-profit corporation headquartered in Lubbock. PPAL provides family planning services, including through WHP (and would through TWHP but for the challenged provisions of the Rules), at its health center in Lubbock. PPAL does not provide abortions.

13. Planned Parenthood Association of Cameron and Willacy Counties ("PPCWC") and Family Planning Associates of San Antonio ("FPA") are Texas not-for-profit corporations headquartered in San Antonio. FPA has four health centers, which do business as "Planned Parenthood," in the metropolitan San Antonio area. PPCWC has two health centers, located in Harlingen and Brownsville. These six health centers all participate in WHP and would participate in TWHP but for the challenged provisions of the Rules. FPA and PPCWC do not provide abortions.

14. Planned Parenthood Gulf Coast, Inc. ("PPGC") is a Texas not-for-profit corporation headquartered in Houston. PPGC provides WHP services at 11 health centers in Texas: 5 in Houston, and 1 each in Bryan, Dickinson, Huntsville, Lufkin, Rosenberg, and Stafford. PPGC would provide TWHP services at these health centers but for the challenged provisions of the Rules. PPGC does not provide abortions.

15. Planned Parenthood of West Texas, Inc. ("PPWT") is a Texas not-for-profit corporation headquartered in Midland. PPWT has two health centers, located in Midland and

San Angelo, that participate in WHP and would participate in TWHP but for the challenged provisions of the Rules. PPWT does not provide abortions.

### B. Defendant

16. Kyle Janek is the Executive Commissioner of the Texas Health and Human Services Commission ("HHSC") and in that capacity oversees the Department of State Health Services ("DSHS"), the agency responsible for the TWHP Rules. He adopted the TWHP Rules "on behalf of" DSHS and is the government official responsible for implementation of the TWHP Rules. He is sued in his official capacity.

## IV. LEGAL, LEGISLATIVE, AND REGULATORY BACKGROUND

### A. The Medicaid Women's Health Program and the WHP Affiliate Rule

17. In 2005, Texas enacted legislation directing HHSC to seek approval from the United States Department of Health and Human Services Centers for Medicare and Medicaid Services ("CMS") for the waiver required for a five-year demonstration project through the Medicaid program "to expand access to preventive health and family planning services for women." Tex. Hum. Res. Code § 32.0248(a). CMS approved the original proposal, and WHP began providing services on January 1, 2007. As the 2005 authorization was set to expire in late 2011, the Texas Legislature reauthorized WHP, "contingent on receiving a waiver" from CMS. Rider 62 to Article II, Health and Human Services, Tex. H.B. 1 (2011).

18. WHP reimburses health care providers for essential well-women services provided to low-income women, including physical exams, screenings for breast and cervical cancer and sexually transmitted infections ("STIs"), and counseling and education about, and the provision of, contraception. *See* Tex. Hum. Res. Code §§ 32.0248(a), (b). Ninety percent of WHP reimbursements are federal funds. WHP does not pay for abortions.

19. Both the 2005 and 2011 legislative authorizations for WHP prohibit HHSC, for the purposes of WHP, from contracting with entities that perform or "promote" abortion or are "affiliates" of entities that perform or "promote" abortion. *See* Tex. Hum. Res. Code § 32.0248(h); *Id.* § 32.024(c-1). Neither the 2005 nor the 2011 legislative authorizations for WHP define "affiliate" or "promote."

20. In 2011, the Texas Legislature considered legislation that would have required WHP to "cease operating" if the ban on contracting with abortion-affiliated entities was invalidated or its enforcement enjoined. Specifically, Senate Bill 1854 and House Bill 2299 stated: "(i) The department shall cease the operation of the program if a court holds that Subsection (h) [of § 32.048] or its application to any person or entity is invalid or enjoins its enforcement. . . . (j) If any provision of this section or its application to any person or circumstance is held invalid, the entire section is invalid. The provisions of this section are nonseverable to achieve this purpose." The proposed legislation was not adopted.

21. From WHP's inception, HHSC took the position that the prohibition on contracting with abortion-affiliated entities could not constitutionally be construed or applied to exclude Planned Parenthood family planning entities from WHP. Instead, HHSC accepted the same affiliate relationships and separation conditions agreed to by DSHS's predecessor agency in settlement on remand from *Planned Parenthood of Houston and Southeast Texas v. Sanchez*, 403 F.3d 324 (5th Cir. 2005). That settlement allowed Planned Parenthood providers to participate in the agency's family planning program if they created legally and financially separate affiliated entities that provide abortions that meet certain requirements, for which they are audited. The settlement terms appear in appropriations riders adopted by the Texas

Legislature in 2007, 2009, and 2011.  *See, e.g.*, Rider 52 to Art. II, Health & Human Services, Tex. H.B. 1 (2011).

22. HHSC's position on Plaintiffs' participation in WHP changed when, in August 2011, it proposed and, in February 2012, adopted a new Rule for WHP, 1 Tex. Admin. Code §§ 354.1361-64 ("WHP Rule"), which defined the terms "affiliate" and "promote" for the purpose of excluding Plaintiffs.  HHSC adopted the WHP Rule even though CMS had previously advised HHSC that it would prevent renewal of the waiver required for federal funding because it conflicts with the requirement of the Social Security Act that "any individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, . . . or person, qualified to perform the service . . . who undertakes to provide him such services."  42 U.S.C. § 1396A(a)(23).  After HHSC adopted the WHP Rule, CMS advised that it would continue federal funding for WHP only through a "phase-out" period, which, pursuant to CMS's most recent communication, will end December 31, 2012.

23. Plaintiffs challenged the constitutionality of the WHP Rule in this Court.  *See Planned Parenthood Ass'n of Hidalgo Cnty., Tex., Inc. v. Suehs*, Case No. 1:12-CV-00322.  On April 30, 2012, this Court entered a preliminary injunction, finding that the WHP Rule likely violated Plaintiffs' First Amendment rights of free speech and association.  *Planned Parenthood Ass'n v. Suehs*, 828 F. Supp. 2d 872 (W.D. Tex. 2012).  On August 21, 2012, a panel of the Fifth Circuit reversed as to one part of Plaintiffs' First Amendment claims, and remanded.  *Planned Parenthood Ass'n v. Suehs*, No. 12-50377, 692 F.3d 343 (5th Cir. 2012).  On October 25, 2012, the Fifth Circuit denied Plaintiffs' petition for rehearing *en banc*.

24. The next day, Plaintiffs brought a lawsuit in Texas state court, claiming that the WHP Rule violates state law.  Plaintiffs obtained a temporary restraining order and a temporary

injunction, which Defendant has appealed, from the Travis County district court. On Plaintiffs' motion, because resolution of their state law claims may make adjudication of their constitutional claims against the WHP Rule unnecessary, this Court abstained and dismissed Plaintiffs' federal challenge to the WHP Rule without prejudice.

      **B.**      **The Texas Women's Health Program and the Challenged Rules**

25. Following CMS's decision not to renew the Medicaid waiver required for federal funding because of the WHP Rule, Governor Perry instructed HHSC to provide these "vital health and wellness services" using only state funds while disqualifying Plaintiffs.

26. On July 9, 2012, Defendant, on behalf of DSHS, proposed, and on October 26, 2012, on behalf of DSHS, adopted rules to establish and govern the Texas Women's Health Program. Defendant's order adopting the TWHP Rules contends that TWHP is "successor to the Medicaid Women's Health Program" to which women enrolled in WHP will transition after the termination of WHP. 37 Tex. Reg. 8583. The client eligibility criteria, financial eligibility requirements, services provided, and reimbursements rates for TWHP are almost identical to those for WHP; however, the definitions and requirements disqualifying Plaintiffs in the TWHP Rules differ from those in the WHP Rules.

27. The TWHP Rules state, in relevant part, that a "TWHP provider must ensure that:

(1) the provider does not perform or promote elective abortions outside the scope of the TWHP and is not an affiliate of an entity that performs or promotes elective abortions; and

(2) in offering or performing a TWHP service, the provider:

    (A) does not promote elective abortion within the scope of the TWHP;

    (B) maintains physical and financial separation between its TWHP activities and any elective abortion-performing or abortion-promoting activity, as evidenced by the following:

        (i) physical separation of TWHP services from any elective abortion activities, no matter what entity is responsible for the activities;

(ii) a governing board or other body that controls the TWHP health care provider has no board members who are also members of the governing board of an entity that performs or promotes elective abortions;

(iii) accounting records that confirm that none of the funds used to pay for TWHP services directly or indirectly support the performance or promotion of elective abortions by an affiliate; and

(iv) display of signs and other media that identify TWHP and the absence of signs or materials promoting elective abortion in the provider's location or in the provider's public electronic communications; and

(C) does not use, display, or operate under a brand name, trademark, service mark, or registered identification mark of an organization that performs or promotes elective abortions.

25 Tex. Admin. Code § 39.38(b). For the purpose of this subsection, "promote" means "advancing, furthering, advocating, or popularizing elective abortion by, for example: . . . using, displaying, or operating under a brand name, trademark, service mark, or registered identification mark of an organization that performs or promotes elective abortions." *Id.* § 39.38(c).

     28.    The TWHP Rules define "affiliate" as

(A) An individual or entity that has a legal relationship with another entity, which relationship is created or governed by at least one written instrument that demonstrates:

    (i) common ownership, management, or control;

    (ii) a franchise; or

    (iii) the granting or extension of a license or other agreement that authorizes the affiliate to use the other entity's brand name, trademark, service mark, or other registered identification mark.

(B) The written instruments referenced in subparagraph (A) of this paragraph may include a certificate of formation, a franchise agreement, standards of affiliation, bylaws, or a license, but do not include agreements related to a physician's participation in a physician group practice, such as a hospital group agreement, staffing agreement, management agreement, or collaborative practice agreement.

25 Tex. Admin. Code § 39.33(1).

29. The TWHP Rules also contain a "poison pill" non-severability clause that states that "to the extent that §39.33(1) of this title, §39.38 of this title, or this section is determined by a court of competent jurisdiction to be unconstitutional or unenforceable, or to the degree an official or employee of DSHS, HHSC, or the State of Texas is enjoined from enforcing these sections, DSHS shall regard this entire subchapter as invalid and unenforceable and shall cease operation of the program." 25 Tex. Admin. Code § 39.45. Defendant added this provision when he adopted the TWHP Rules. It was not in the proposed TWHP Rules or the WHP Rules. And it is substantively identical to the amendment considered, but not adopted, by the Legislature.

30. Defendant's order adopting the TWHP Rules claims that Plaintiffs' exclusion is justified because "the Legislature intended for any successor program to the Medicaid Women's Health Program to forbid any type of message regarding elective abortions." 37 Tex. Reg. at 8587. But as the then-then-deputy director of HHSC in charge of the Medicaid program testified, there is no anti-abortion or any other governmental message in WHP or its "successor program," where the State functions effectively only as an insurer.

31. Under Defendant's order adopting the TWHP Rules, they became effective November 1, 2012. However, upon information and belief, Defendant and DSHS have not, in fact, begun implementing TWHP. Instead, while claiming the right to terminate WHP and begin TWHP at any time effective immediately, Defendant continues to operate WHP, and has publicly indicated an intent to continue to do so while federal funding continues.

## V.  THE IMPACT OF THE CHALLENGED PROVISIONS OF THE TWHP RULE

### A.  Sections 39.33(1) and 39.38 of the TWHP Rules Disqualify Plaintiffs

32. Plaintiffs all use the registered service mark "Planned Parenthood" in providing medical services. Plaintiffs are all affiliates of, or ancillary organizations of affiliates of, Planned

Parenthood Federation of America, Inc. ("PPFA"), and they all have a legal relationship with PPFA which is governed by PPFA's written bylaws and standards of affiliation. PPFA does not perform abortions, but it advocates to protect and facilitate access to safe and legal abortion for women who choose to exercise their right to choose. Defendant has taken the position that such advocacy, and using or being authorized to use that name, constitute promotion of abortion.

33.  All but one Plaintiff has a legal relationship, which is created or governed by at least one written document, with an entity that provides abortion care and that advertises that it provides those services. Although these Plaintiffs and their related abortion providers have easily distinguishable names, these Plaintiffs are "affiliates" of abortion providers that use the registered service mark "Planned Parenthood." Some Plaintiffs with a related abortion provider have one or more member of their Boards of Directors that serve on the Board of Directors of the affiliated abortion provider as well.

34.  Plaintiffs operate 47 health centers throughout Texas where women can enroll in, and obtain services through, WHP (and could through THWP but for the challenged provisions of the TWHP Rules). Each Plaintiff that has an affiliated abortion provider keeps its WHP activities wholly separate from its affiliate's provision of abortion, as required by the *Sanchez* settlement and for which they have been audited. At 41 of Plaintiffs' health centers, abortions are not available at all. At the remaining 6, abortions are provided either in separate suites from where WHP services are provided or at different times from when WHP services are available.

35.  Numerous other entities nationwide, over which Plaintiffs exercise no control and that do not exercise any control over Plaintiffs, use the registered service mark "Planned Parenthood" in providing medical services, including abortion.

36. All Plaintiffs engage in education and advocacy designed to protect and facilitate access to safe and legal abortion using private funds either by engaging in that conduct themselves or through an affiliated entity that engages in such education and advocacy.

37. Although Plaintiffs are all legally and financially separate from any entity that performs abortions, and they do not encourage women to have abortions, the TWHP Rules appear to bar them from the program based on these legal relationships and all or most of this conduct, and perhaps other conduct as well.

B. **The Challenged Provisions of the TWHP Rules Will Irreparably Harm Plaintiffs and Their Patients and Disserve the Public Interest**

38. The TWHP Rules will cause severe, irreparable injury to Plaintiffs. Unless Plaintiffs completely change who they are by giving up their identity as "Planned Parenthood," and by disassociating themselves from any entity that performs abortions and/or that advocates for women's access to comprehensive reproductive health care, they will be ineligible to participate in TWHP, which Defendant contends is the "successor" to WHP.

39. Plaintiffs' combined reimbursements from WHP totaled approximately $13 million during 2011. WHP reimbursements are already not adequate to cover Plaintiffs' costs of providing these services, and the loss of this funding will severely impact their operating budgets. Without this funding, Plaintiffs will be forced to reduce services, close health centers, and/or lay off employees. Once these actions are taken by Plaintiffs, it would be very expensive – if not impossible – for them to resume operations as they are today.

40. These injuries to Plaintiffs are especially acute because, in 2011, Texas's family planning program was cut by two-thirds and the remaining funds reallocated, excluding Plaintiffs from that funding. As a result of these reductions, Plaintiffs already have been forced to close more than a dozen health centers.

41.     According to HHSC data, 111,412 women received services that were reimbursed through WHP in 2011.  Plaintiffs' health centers served at least 48,000 of those women.  Without Plaintiffs in TWHP, these women will also suffer irreparable injury as they are forced to choose between seeking services from Plaintiffs at substantially higher self-pay costs, trying to seek TWHP services elsewhere, or forgoing care altogether.

42.     Because these are women with family incomes at or below 185 percent of the federal poverty level, it will be difficult for them to self-pay.  If they do self-pay, they likely will have to forgo some of the care for which TWHP would have provided reimbursement.  For example, some will forgo testing for certain types of cancer or STIs and/or switch to cheaper, but less effective, methods of contraception, thereby decreasing their overall health and placing themselves at greater risk of diseases going undiagnosed and/or unplanned pregnancies.

43.     If these women instead elect to try to find another provider, doing so will not be easy.  There are simply not enough TWHP providers to absorb the tens of thousands of women who rely on Plaintiffs under WHP.  Besides Plaintiffs, there are few large providers and many of those have also faced recent funding cuts.  Small providers alone cannot absorb the tens of thousands of women served by Plaintiffs.  This means that many of Plaintiffs' patients may be unable to find another provider who participates in TWHP.

44.     At a minimum, many of Plaintiffs' WHP patients will have to travel further (at greater expense to them) and/or wait longer for appointments.  Delays in seeking testing and treatment for cancer as well as STIs will have devastating health consequences for some of these women.  Lack of access to and delays in receiving family planning services can be expected to lead to an increase in unplanned pregnancies and, in turn, to an increase in abortions.

45. Given the difficulties of continuing to seek care either at Plaintiffs' health centers or alternative providers, many of Plaintiffs' patients will simply go without this preventive care altogether, resulting in them being at increased risk of undiagnosed cancer and STIs, unplanned pregnancies, and abortion.

46. The challenged provisions of the TWHP Rules also harm the public interest because TWHP, as "successor" to WHP, will cost Texas taxpayers an additional nearly $180 million over five years (90 percent of the $220 million projected cost of TWHP) that would be funded by the federal government but for Defendant's insistence on excluding Plaintiffs. The challenged provisions of the TWHP Rules will also cause the State to have greater healthcare costs because the services Plaintiffs would provide through TWHP save the State money.

47. Plaintiffs have no adequate remedy at law.

## CLAIMS FOR RELIEF[2]

### COUNT I – UNCONSTITUTIONAL CONDITION
### (First Amendment to the U.S. Constitution)

48. Plaintiffs hereby reaffirm and reallege each and every allegation made in ¶¶ 1-47 above as if set forth fully herein.

49. Sections 39.33(1) and 39.38 of the TWHP Rules impose unconstitutional conditions on Plaintiffs' eligibility to participate in TWHP in violation of their First Amendment right to freedom of speech.

---

[2] Plaintiffs reserve their right to litigate in this action all of their federal constitutional claims against the TWHP Rules, including that barring them because they "use" or "display," or are even "authorized" to use, a service mark "of an organization that performs or promotes elective abortions," 25 Tex. Admin. Code § 39.38(b), is an unconstitutional condition. The Fifth Circuit held, on appeal from a preliminary injunction, that Plaintiffs were not likely to succeed on their challenge to a similar provision in the WHP Rules. However, Plaintiffs will be unable to obtain further review of that ruling given that WHP is ending and their constitutional challenge to the WHP Rule will become moot.

### COUNT II – UNCONSTITUTIONAL CONDITION
### (First Amendment to the U.S. Constitution)

50. Plaintiffs hereby reaffirm and reallege each and every allegation made in ¶¶ 1-49 above as if set forth fully herein.

51. Sections 39.33(1) and 39.38 of the TWHP Rules impose unconstitutional conditions on Plaintiffs' eligibility to participate in TWHP in violation of their First Amendment right to freedom of association.

### COUNT III – UNCONSTITUTIONAL CONDITION
### (Fourteenth Amendment to the U.S. Constitution)

52. Plaintiffs hereby reaffirm and reallege each and every allegation made in ¶¶ 1-51 above as if set forth fully herein.

53. Sections 39.33(1) and 39.38 of the TWHP Rules impose unconstitutional conditions on Plaintiffs' eligibility to participate in TWHP because Plaintiffs are disqualified based upon their providing abortion services through legally and financially separate affiliates.

### COUNT IV – UNCONSTITUTIONAL CONDITION
### (Fifth Amendment to the U.S. Constitution)

54. Plaintiffs hereby reaffirm and reallege each and every allegation made in ¶¶ 1-53 above as if set forth fully herein.

55. Sections 39.33(1) and 39.38 of the TWHP Rules impose unconstitutional conditions on Plaintiffs' eligibility to participate in violation of the Fifth Amendment prohibition on the taking of property.

### COUNT V – EQUAL PROTECTION OF THE LAWS
### (Fourteenth Amendment to the U.S. Constitution)

56. Plaintiffs hereby reaffirm and reallege each and every allegation made in ¶¶ 1-55 above as if set forth fully herein.

57. Sections 39.33(1) and 39.38 of the TWHP Rules violate Plaintiffs' right to equal protection under the laws because those sections treat Plaintiffs differently from individuals or entities that have written "agreements related to a physician's participation in a physician group practice, such as a hospital group agreement, staffing agreement, management agreement, or collaborative practice agreement" with individuals or entities that perform or "promote" abortions as those terms are defined in the TWHP Rule without adequate basis for the differential treatment.

WHEREFORE, Plaintiffs request that this Court:

1. Issue a declaratory judgment that Sections 39.33(1) and 39.38 of the TWHP Rules violate the rights of Plaintiffs by imposing unconstitutional conditions on Plaintiffs' participation in TWHP, in violation of the First, Fourteenth, and Fifth Amendments to the United States Constitution;

2. Issue a declaratory judgment that Sections 39.33(1) and 39.38 of the TWHP Rules violate the rights of Plaintiffs by treating them differently from individuals or entities that have written "agreements related to a physician's participation in a physician group practice, such as a hospital group agreement, staffing agreement, management agreement, or collaborative practice agreement" with individuals or entities that perform or "promote" abortions as those terms are defined in the TWHP Rules without adequate basis for the differential treatment in violation of the Fourteenth Amendment to the United States Constitution;

3. Issue permanent injunctive relief, without bond, restraining the enforcement, operation, and execution of Sections 39.33(1), 39.38, and 39.45 of the TWHP Rules;

4. Grant Plaintiffs attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988; and

     5.    Grant such further relief as this Court deems just and proper.

Dated: December 11, 2012

                       Respectfully submitted,

/s/ P.M. Schenkkan
P.M. Schenkkan
State Bar No. 17741500
Susan G. Conway
State Bar No. 04716200
GRAVES, DOUGHERTY, HEARON
& MOODY, P.C.
401 Congress Avenue, Suite 2200
Austin, TX 78701-3744
(512) 480-5673
pschenkkan@gdhm.com
sconway@gdhm.com

Roger K. Evans[*]
Planned Parenthood Federation of America
434 W. 33rd Street
New York, NY 10001
(212) 541-7800
roger.evans@ppfa.org

Helene T. Krasnoff[*]
Carrie Y. Flaxman[*]
Planned Parenthood Federation of America
1110 Vermont Avenue NW, Suite 300
Washington, DC 20005
(202) 973-4800
helene.krasnoff@ppfa.org
carrie.flaxman@ppfa.org

ATTORNEYS FOR PLAINTIFFS

      [*]Application for admission *pro hac vice* forthcoming